Number 20-1165 Big Baboon, Inc. v. SAP America, Inc. Mr. Wright. Thank you, Ron. So this is a parallel case involving the award of attorneys under 35 U.S.C. 285 to SAP and HP for litigation from the infringement suit which we discussed earlier. And basically to justify an award of attorney's fees under opt-in fitness, a district court needs to weigh the totality of the circumstances in that case and find some type of litigation misconduct to justify that. And in this case, the district court had a magistrate prepare a report and recommendation on the attorney's fees and the district court basically just adopted it. I don't understand your statement that litigation misconduct is required before fees can be awarded. Well, that's under opt-in fitness, Your Honor. So you need to have some – there has to be something of either unprofessional or improper conduct or litigation misconduct. And it's, again, totality of all the circumstances in a case. And including those parties' conduct, including the improper conduct of the move-in for attorney's fees. So here would be SAP and HP. And as Your Honors are aware from the earlier case, there is quite a history between the two parties here leading to this case. And interestingly, the report and recommendation doesn't mention any of this type of history regarding reexamination of SAP or the CDM petition of SAP. And doesn't discuss how the mapping of the claims of SAP onto Claim 15 started this. And basically then adopts its own narrative of the facts to try to find litigation misconduct or improper behavior. What the court found was that the pursuit of litigation was objectively unreasonable, right? Yes. Yes, Your Honor. That's correct. And basically awarded fees based on some arbitrary line in the sand where we should have known that the patent would be invalidated in the manner that the court did so, basically based on secret sales. Things that were filed under seal that if the patent were to be held invalid, we would have no idea about. The magistrate judge specifically found that you had been told in 2018 about records that had previously been produced in 2010 showing the pre-critical date shipments. If that were the case, Your Honor, then it would have been in the reexamination. There are two things. There's one in the earlier case, the first case, where there were records that discussed sales. But again, 3.1 and all that was also in the reexam. And by the time the second suit happened, we had the declaration of Greenspun basically saying everything is present in there but web enablement and sets that out. And that is SAP's own doing. Let's assume for the moment that we reject your position about Greenspun and we conclude that that provides no contrary evidence to the invoices and the characterization of the invoices as offering the web-enabled product for sale in October 1996. Is there anything wrong under those circumstances with the award of attorney's fees? So basically, Your Honor, where is the unreasonable conduct from the plaintiff to proceed to see if these secret sales are in fact secret sales? All of this was produced under seal. All of this was unaware to the plaintiff. They had never heard prior to... He only awarded fees for the time after which you became aware of this, right? Yes, but a significant amount of fees. And for a wide range of activities basically for the case going forward. But you didn't do any discovery to dispute all those documents that were provided to you, did you? There was no discovery to be had. It was not in discovery. The case was still in initial claim construction in claim discovery. So the full discovery had not even opened in this case to go forward. So you didn't have... They produced these records basically alongside of their summary judgment motion. Now, they did offer to provide declarants and whatnot right now and people to depose in a very short time period. But in view of the prior actions of SAT, the testimony of Greenspun, the literature that showed that, hey, this is not... There is evidence saying this is not correct. These are not on sale in October of 1996. And claims did proceed. But what's troubling is in the report and recommendation, all of a sudden the magistrate starts giving a unique narrative of the facts, calling Big Baboon a serial litigant, which it had one case and wanted to amend that first case to add claims to a student. The judge said, no, file a second case, which Big Baboon did. And then, you know, in the meantime, SAT repeatedly twice attacked the patents of Big Baboon. So it doesn't... I don't... The qualification that somehow Big Baboon is a serial litigant, it does not... It seems incorrect. And again... What's wrong with the district court's conclusion that it was unreasonable of you to continue to litigate after the invoices were called to your attention and you were told that the invoices were for a web-enabled product? So they then filed a summary judgment motion backing that up. And then right after that, when the summary judgment was filed, the plaintiff consented to all extensions and stopped everything while this was adjudicated. Just to then really... If the position is just because one party merely tells another party, hey, I've got evidence that invalidates, drop it right now. And that party doesn't show it. And that party hasn't brought it. That would seem very unreasonable to say that that's litigation misconduct if you push forward on that. Because then, should I just take... Should the plaintiff just take the word of SOP? I'm sorry, we're not due this. And be able to at least call to hand. Unless they say, okay, you say that and prove it. And so by the time Big Baboon actually sees all this evidence and these declarations and things like that, you're at the summary judgment stage. At which case, Big Baboon begins to start saying everything and saying discovery and saying... And not pushing forward to see what the judge is going to do. So to me, that is reasonable litigation conduct. And certainly not wasting the court's resources. So, again, the mere fact that one party says, I have this, I've got a gotcha. And the one party wants to wait and see if the gotcha is legitimate or not, shouldn't in and of itself be unreasonable. So, unless there's any further questions, I'll yield my opening time. Okay, hearing no further questions, let's hear from Mr. Hamm. Good morning, your honors, and may it please the court. The federal circuit should affirm the district court's finding that this is an exceptional case and its resulting attorney fee award. At its core, this case is exceptional because Big Baboon does not know when to stop, no matter how weak its position. The district court correctly held Big Baboon's case on the merits was exceptionally weak. And under octane fitness, the substantive strength of the party's litigation position is all that's needed to award fees and to find a case exceptional. There does not need to be unreasonable conduct, even though there was in this case. This is a unique case in which Big Baboon's own accusation created its patents in validity. Big Baboon accused the product of infringing its patent, but that product was sold before the patents critical date. This makes the patent invalid under Evans cooling. And as you've pointed out, at least by August 31st, 2018, Big Baboon well knew the facts and the law that invalidated its patent. And August 31st, 2018 forward is the only time period for which the district court awarded fees. Big Baboon knew the facts. It knew it accused R33.1 because it made that accusation. And Big Baboon knew that SAP sold this product before the critical date because Big Baboon had uncontested pre-critical date sales records, which Big Baboon first received way back in 2010, and which SAP reminded Big Baboon of on August 31st, 2018. Big Baboon also knew the law. In June 18, it was Big Baboon who introduced Evans cooling to this action by featuring the case in its failed motion for partial summary judgment. In mid-August, 2018, Big Baboon acknowledged to the district court that absolutely, if it accused the pre-critical date product of infringement, it should be out of court. And on August 31st, 2018, SAP reminded Big Baboon of the evidence and the law showing that the accused product was sold prior to the critical date. But Big Baboon does not know when to stop. Now Big Baboon argues on appeal it was justified in filing suit as retaliation for SAP's prior patent office proceedings against the asserted 275 patent. Retaliation is not an acceptable reason under any standard for refusing to stop suing on a plainly invalid patent. Big Baboon also argues on appeal that its position on the merits of patent validity was reasonable. But Big Baboon waived this argument by not making it to the district court. In any event, Big Baboon's argument is based on misrepresenting the evidence, we believe. As you've discussed this morning, Big Baboon insists the Phillips Greenspun Declaration states the accused product was not sold until 1997 after the critical date. But the declaration doesn't say that and it doesn't suggest that. Big Baboon also argued its litigation position was reasonable because it accused a different R33.1 than the prior R33.1. But Big Baboon provides no evidence in support of this dual identity theory. In addition to Big Baboon's exceptionally weak position on the merits, as an alternative ground, the district court found this case exceptional because Big Baboon litigated in an unreasonable manner, which is the second path that Octane Fitness sets out for showing that a case is exceptional. Big Baboon abusively filed serial suits on the same patent because Big Baboon does not know when to stop. On appeal, Big Baboon insists it is not a serial litigant that it filed only one patent suit. That's simply not true. It filed one suit on the 275 patent in the central district of California and when that suit was over, it filed a different suit on the 275 patent in the northern district of California. And as SAP noted in its response brief, on top of that, Big Baboon sued the patent office in the western district of Washington to challenge its reexamination decision against the 275 patent while Big Baboon was simultaneously appealing that same decision to this court. That's three patent suits, not one. The district court also found Big Baboon's litigation conduct unreasonable because it filed a meritless motion for partial summary judgment. The motion was meritless because Big Baboon sought summary judgment based on evidence about a different product, R33.0E, than the product it accused of infringement, which was R33.1. Big Baboon also argues on appeal that its litigation conduct was reasonable because three times it agreed to discovery extensions. Big Baboon's extensions were too little, too late. SAP requested a stay on August 31, 2018 when it sent Big Baboon that letter connecting all of the dots about why the court would grant summary judgment. But Big Baboon didn't agree to the first of the three extensions until January 2019. That's four months. During those four months, SAP was forced to spend a significant amount on this case and it's that expenditure which makes up most of the court's fee award. Finally, Big Baboon argues the fee award is too high. It argues that it is not reasonable that SAP spent 458.1 hours briefing its motions for summary judgment and attorney's fees. Again, Big Baboon's just not being upfront. The district court opinion is crystal clear that it awarded fees for 196.5 hours on these motions, not 458.1 hours. And I also wanted to respond to a couple of things that came up in Mr. Reich's argument. He said that the case wasn't in discovery during the summary judgment phase, but that's not true. It was in discovery. So I think that argument can be dismissed with as well. And as you've pointed out, they didn't try to take any discovery on the 3.1 products. So to the extent they say they should have had that opportunity, they just didn't take advantage of it. So in conclusion, the district court did not abuse its discretion in any way. And the Federal Circuit should affirm all challenge aspects of its decision. If there are any questions, I'll try to provide a response. And otherwise, I'll yield the rest of my time. Thank you. Okay, hearing no further questions, thank you, Mr. Reich. Thank you. So several quick responses to Mr. Hamm. So first and foremost, I'm unaware why SAP brings up the patent office lawsuit challenging the reexamination. That's a completely different matter and different procedure for trying to undo a reexamination. So that's not a lawsuit or a patent lawsuit against anybody. So in fact, referring again to the opinion, the magistrate's report, even though they said that arbitrary dates in 2018, that somehow they should have known, there was still some time before they did see a declaration or any testimony from Rogen Camper saying what is going on in October of 1996. And again, I don't believe it's reasonable to say that you just have to take someone's word for it before they have to show it to you. Again, he also brought up discovery. Claim discovery was open, but not full discovery. And basically, the fact that, you know, again, Mr. Hamm called us a serial or called Big Dad in a serial litigant. It had one lawsuit. It tried to add the same claim in that lawsuit. The district court said, please, just do it somewhere else that wasn't raised in the first suit. So the Big Badoon had to then bring action against SAT and HP in the Northern District of California because T.C. Heartland was becoming clear that jurisdiction is going to have to be with people of residence, even within the same. And that is the law now, too. So with that, unless there are any further questions, I yield my time. Okay. Thank you, Mr. Wright. Thank you, Mr. Hamm. The case is submitted.